# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1103V
UNPUBLISHED

| | |
|---|---|
| KIMBERLY WIRTZ<br><br>                 Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                 Respondent. | Chief Special Master Corcoran<br><br>Filed: April 1, 2022<br><br>Special Processing Unit (SPU);<br>Table Injury Dismissal; Influenza<br>(Flu); Shoulder Injury Related to<br>Vaccine Administration (SIRVA);<br>Prior Shoulder Pain |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Meghan Murphy*, U.S. Department of Justice, Washington, DC, for Respondent.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING TABLE CLAIM**[1]

On August 31, 2020, Kimberly Wirtz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table injury - that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on October 31, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished opinion contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the opinion will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, the record does not support the conclusion that Petitioner can satisfy certain requirements for her Table SIRVA claim, making its dismissal appropriate. Nonetheless, Petitioner will be afforded the opportunity to pursue a non-Table claim, outside of SPU.[3]

## I. Relevant Procedural History

Along with the Petition in this case, Petitioner filed her affidavit and medical records. Exhibits 1 – 2, ECF No. 1. She alleged that she received a flu vaccine on October 31, 2018, in her left shoulder, and immediately experienced pain. Ex. 2 at ¶ 5. Additionally, Petitioner maintained that "[p]rior to vaccination, [I] had no history of left shoulder injuries." Ex. 1 at ¶ 3. *See also* Ex. 2 at ¶ 3 (stating that "[p]rior to receipt of the flu shot . . . I did not have any injuries to my left shoulder.").

During the initial status conference, held on January 25, 2021, the parties discussed the medical records contradicting Petitioner's assertion that she had no pre-vaccination history of shoulder injuries. Order issued January 28, 2021, ECF No. 13. It was specifically noted that "Petitioner had multiple medical visits that were, at least in part, for her left shoulder symptoms in the years leading up to vaccination." *Id.* at 1. Therefore, I ordered Petitioner to show cause why her Table claim should not be dismissed. *Id.* at 2. Petitioner filed her response ("Response") on March 29, 2021 (ECF No. 14). Respondent filed his reply ("Reply") on April 12, 2021 (ECF No. 15). Therefore, this matter is now ripe for adjudication.

## II. Issue

At issue is whether Petitioner is able to satisfy the first criterion of the Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA claim, which requires "[n]o history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 C.F.R. § 100.3(c)(10)(i).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). In making this determination, the special master or court should consider the record as a

---

[3] Findings of Fact and Conclusions of Law addressing this matter were originally issued on March 23, 2022 (ECF No. 18),but were subsequently withdrawn. The present Findings of Fact and Conclusions replace the withdrawn version.

whole. *Id.* Further, Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

## IV.  Relevant Factual Evidence

I have reviewed all of the records filed to date. This ruling, however, is limited to determining whether Petitioner had a pre-vaccination history of pain, inflammation or dysfunction of her left shoulder that explains the shoulder symptoms she experienced after her October 2018 flu shot. Accordingly, I will only summarize or discuss evidence that directly pertains to this issue.

- Four years before the vaccination at issue, Petitioner presented to Dr. Chong Lee on October 16, 2014. Ex. 1 at 11. The medical note documenting this appointment indicates that Petitioner was previously seen for left arm numbness and tingling. *Id.* The medical note further indicates Petitioner had been diagnosed with foraminal stenosis secondary to cervical spondylosis. *Id.*

- On November 21, 2014, Petitioner underwent cervical laminotomy and foraminotomy. Ex. 1 at 53.

- In a May 21, 2015 email to PA-C Rebecca Sorg, Petitioner reported left shoulder pain that extended to the left side of her neck and head. Ex. 1 at at 119.

- In a May 22, 2015 email to Dr. Lee, Petitioner reported "having a lot of pain in my left shoulder, up the left side of my neck, and the back of the left side of my head." Ex. 1 at 121. She also reported pain and tingling into her left hand and fingers. *Id.*

- Petitioner presented to PA-C Sorg on June 4, 2015. Ex. 1 at 128 - 132. In addition to citing a number of ailments, it was noted that Petitioner was experiencing "intermittent L[eft] upper shoulder pain, radiating numbness and tingling down arm" as well as tenderness in her left upper trapezius. *Id.* at 128, 130.

- At a July 8, 2015 follow-up appointment with her neurologist, Dr. David Schmidt, Petitioner reported that "she has had pain in her left shoulder and neck for a long time." Ex. 1 at 172.

- An August 23, 2015 triage note indicates that Petitioner presented to the emergency room after slipping and falling on her left side. Ex. 1 at 234. Petitioner reported that her left neck and shoulder muscles were painful. *Id.*

3

- Petitioner presented for medical care on November 24, 2015. Ex. 1 at 272-283. Petitioner complained of left shoulder pain "starting after move on 10/31." *Id.* at 272. In addition to noting soreness, she also shared that she was unable to sleep on her left side, felt that "the AROM [active range of motion] was less" and "started to have pain with abduction radiating down to elbow and also posterior shoulder pain" in following days. *Id.* Although Petitioner's complaints were limited to her left shoulder, she was diagnosed with "impingement syndrome of right shoulder." *Id.* at 274.[4]

- In a May 18, 2016 email to Dr. Kendra Kay Smith, Petitioner noted that she had previously been referred to a physical therapist for treatment of her "left neck/shoulder." Ex. 1 at 313. Petitioner further explained that she had chronic pain in her left shoulder as well as pain that extended up the left side of her neck and head. *Id.*

- On June 8, 2016, Petitioner presented to Dr. Smith for a "well care visit." Ex. 1 at 319-338. During the course of this visit, Petitioner reported that she "self-referred" to physical therapy for her left shoulder pain. Ex. 1 at 326.

- Petitioner presented for physical therapy on June 14, 2016. Ex. 1 at 339. The reason for her visit was noted as "left shoulder" and occipital neuralgia. *Id.* The physical therapist noted that the date of onset was "chronic" with a "flare 8 months ago moving into new home 10/24." *Id.*

- Petitioner presented to Dr. Schmidt on January 31, 2017 regarding left occipital neuralgia. Ex. 1 at 468. The medical note documenting this visit indicates that Petitioner "has a lot of tension in the left neck and shoulder . . . her muscles are rock hard on the left side when this happens." *Id.*

- In a February 19, 2017 email to Dr. Schmidt, Petitioner speculated on the existence of a pinched nerve. Ex. 1 at 531-32. She noted "pain from my forehead and left eye, up and over my head, behind my ear, down my neck including sharp pain below my ear, across my shoulder, down into the shoulder blade and down my arm into my wrist and hand." *Id.* at 532.

- On January 11, 2018, Petitioner sent an email to Dr. Schmidt. Ex. 1 at 668. In it, she stated "pain in my shoulder, up my neck, up the back and side of my head

---

[4] Because Petitioner did not mention any issues concerning her right shoulder during this visit, it is likely that this diagnosis should have been related to Petitioner's left shoulder. However, my ultimate decision does not turn on this determination.

4

around to my eye. At times I can also feel it down in my left hand." *Id*. Petitioner further stated that she was unsure if her symptoms were related to occipital neuralgia or cervical spinal stenosis. *Id*.

- On October 10, 2018, 21 days before vaccination, Petitioner reported that "[t]he muscles down into the left side of my neck and into my shoulder" were "super tight and sore to the touch." Ex. 1 at 813.

- Petitioner was administered a flu shot in her left shoulder on October 31, 2018. Ex. 1 at 1163.

- On December 10, 2018, Petitioner presented to Dr. Smith with complaints of left shoulder pain that she represented had begun after her October flu shot. Ex. 1 at 837-45. In addition to noting limited range of motion, Petitioner also complained of numbness and tingling. *Id*. at 837.

- Over six months later, Petitioner presented to physical therapy evaluation concerning her left shoulder on June 17, 2019. Ex. 1 at 920. The date of onset was recorded as "[l]ast fall/2018" after a flu shot. *Id*.

- At Petitioner's request, on April 6, 2021, Dr. Smith drafted a letter concerning Petitioner's December 10, 2018 medical appointment. After providing a broad overview of Petitioner's medical history, which included "left shoulder pain and tingling in the 4th and 5th fingers per chart note 06/04/2015," Dr. Smith concludes that "it is not clear if the flu vaccine was the direct cause of left upper extremity symptoms, only that [Petitioner's] pain and paresthesias began after receiving the flu vaccine." Ex. 3.

### V. Parties' Arguments

Petitioner contends that her demonstrated pre-vaccination symptoms were related to her neck pain and occipital neuralgia diagnosis, distinguishing them from her post-vaccination SIRVA injury. Response at 2. She also maintains that she did not have limited range of motion in her left shoulder before vaccination – only after. In further support of her position, Petitioner submitted a letter from her physician stating that "[Petitioner's] pain and paresthesias began after receiving the flu vaccine." Ex. 3.

Respondent, on the other hand, argues that Petitioner's medical records demonstrate a "history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration" that is connected to, and explains, her post-

vaccination symptoms – specifically "the left shoulder injury and impingement in 2015." Reply at 4. Noting that Petitioner experienced limited range of motion in her left shoulder as well as numbness and tingling in her left upper extremity both before and after vaccination, Respondent asserts that "[t]he consistency of these symptoms point to an ongoing process related to [P]etitioner's previous conditions, rather than an acute vaccination injury." *Id.* at 5.

### VI. Findings of Fact and Dismissal of Table Claim

The medical record does not preponderantly support the first criterion for a Table SIRVA, which requires "[n]o history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection." 42 C.F.R. § 100.3(c)(10)(i). Indeed, Petitioner has a history of left shoulder issues extending back to as early as 2014. *See* Ex. 1 at 11 (October 16, 2014 medical note indicating that Petitioner was previously seen for left arm numbness and tingling). By 2015, Petitioner's complaints included left shoulder pain. Ex. 1 at 119, 121, 128. And, in November 2015, Petitioner's symptoms progressed to include limitations in range of motion. Ex. 1 at 272. Petitioner's left shoulder issues continued over the next three years and were often mentioned during appointments concerning her occipital neuralgia and cervical stenosis diagnoses. *See, e.g.,* Ex. 1 at 339 (June 14, 2016 physical therapy note documenting Petitioner's referral for occipital neuralgia and her left shoulder); Ex. 1 at 468 (January 31, 2017 medical note summarizing Petitioner's appointment concerning occipital neuralgia and noting Petitioner's complaint of left shoulder tension). And on October 10, 2018 – only 21 days before receiving the flu shot - Petitioner reported that muscles extending down the left side of her neck and shoulder were tight and sore. Ex. 1 at 813.

Dr. Smith's April 6, 2021 letter stating that Petitioner's pain and paresthesias began only *after* receiving the flu vaccine is inconsistent with the medical record evidence. Moreover, Petitioner's attempts to distinguish her pre-vaccination symptoms from those arising after her flu shot in 2018 are unavailing. Petitioner's complaint of numbness and tingling, which was first documented in 2014, was again noted during her first post-vaccination appointment on December 10, 2018. Ex. 1 at 837. Petitioner's 2015 complaint of left-sided limitations in range of motion was also resurrected during this December 2018 visit. *Id.* As observed by Respondent, the uniformity of Petitioner's pre and post-vaccination complaints "point to an ongoing process related to [P]etitioner's previous conditions, rather than an acute vaccination injury." Reply at 5.

Based on the foregoing, Petitioner cannot satisfy the first QAI criterion for a Table SIRVA.

## VII. Potential for Off-Table Claim

A petitioner's failure to establish a Table injury does not necessarily constitute the end of the case, because he or she might well be able to establish a non-Table claim for either causation-in-fact or significant aggravation. *See Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005); *W.C. v. Sec'y of Health & Human Servs.*, 704 F.3d 1352, 1357 (Fed. Cir. 2013) (citing *Loving v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 135, 144 (2009)).

Here, it is conceivable that Petitioner could establish that the vaccination at issue worsened her pre-vaccination symptoms/condition. But formal resolution of this issue will likely require further review and most likely the retention of experts, which I am not inclined to authorize in the SPU. Moreover, this case has already been pending in the SPU for over fifteen (15) months – meaning it is inadvisable to allow it to stay in SPU any longer.

## VIII. Conclusion

Petitioner has not satisfied the first QAI criterion for a Table SIRVA. Accordingly, her Table SIRVA claim is dismissed. Pursuant to Vaccine Rule 3(d), I will issue a separate order reassigning this case randomly to a Special Master.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master